UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **TIMOTHY MATHIS** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. Action No. 4:13-cv-134 |
| | § | |
| **BDO USA, LLP,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case arises out of Plaintiff Timothy Mathis's employment with — and termination by — Defendant BDO USA, LLP ("BDO"). Before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 15.) After considering the Motion, all responses, replies, arguments made at this Court's hearing, and the applicable law, the Court concludes that the Motion should be **GRANTED IN PART AND DENIED IN PART**.

### I.     BACKGROUND

The Court discusses specific pieces of relevant evidence below, in the context of how they bear on the Motion for Summary Judgment, but a brief summary is necessary at the outset. Defendant BDO hired Plaintiff Timothy Mathis in March 2008 as Senior Tax Manager/Southwest Regional Leader for BDO's R&D Group in Houston. (Doc. No. 25-9 at 1-2). While at BDO, Plaintiff reported to Chris Bard, head of the R&D tax department, and Jonathan Forman, the Southwest Regional Leader for R&D tax. (Doc. No. 25-1 at 2; 25-9 at 2.)

In August 2009, Plaintiff was hit by a car on his way to a client meeting. (Doc. No. 25-10 at 7.) Mathis was out of the office for significant stretches over the next several months, though upper management at BDO did not learn that fact until March 2010. (Doc. No. 25-1 at 4-

5; Doc. No. 25-3 at 1.) In March, Mathis expressed a desire to take retroactive Family and Medical Leave Act ("FMLA") leave, though he ultimately decided against doing so. (Doc. No. 25-3 at 1; Doc. No. 25-3 at 8; Doc. No. 25-4 at 21.) In the months following his accident — indeed, until his termination — Mathis spoke regularly with Bard and Forman about his injuries. As discussed more below, however, the parties disagree about how those communications should be interpreted.

In May 2010, because it felt Mathis's production insufficient (Doc. No. 25-1 at 5-6), BDO made a preliminary decision to eliminate Plaintiff's position, but ultimately reconsidered. (Doc. No. 25-1 at 6; Doc. No. 25-9 at 2; Doc. No. 25-2 at 27-28.) With his injuries still not healed, Mathis requested FMLA leave on September 20, 2010 and BDO approved it ten days later. (Doc. No. 25-5 at 4-8.) Mathis returned to work toward the end of November. (*Id.* at 23-24.)

In the early spring of 2011, BDO continued to express concern about Mathis's productivity, urging him to sell more work and be more productive. (Doc. No. 25-6 at 9.) Later that spring, BDO once again considered eliminating Mathis's position. (Doc. No. 25-1 at 10; Doc. No. 25-6 at 13-14.) It ultimately chose to do so on June 3, 2011. (Doc. No. 25-6 at 14.) Five days later, it elected to combine its Southwest and Central Regions. (Doc. No. 25-1 at 11; Doc. No. 25-8 at 7-8.)

On June 9, 2011, Bard invited Mathis to a June 13 meeting, at which Mathis was to be terminated. (Doc. No. 25-8 at 6; Doc. No. 25-1 at 10.) The next day, Mathis requested a reduced work schedule to accommodate lingering effects of his accident. (Doc. No. 25-8 at 9.) He was terminated the following Monday, June 13, 2011, at a face-to-face meeting in Houston. (Doc. No. 25-1 at 11.)

2

Plaintiff timely filed a complaint with the Texas Workforce Commission Civil Rights Division and received a Notice of Right to File a Civil Action on Nov. 15, 2012. (Doc. No. 1 ¶ 5.1.) This suit was filed in January 2013. (Doc. No. 1.)

## II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation marks and citation omitted).

"Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party." *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007). The Court may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 300 (2d ed. 1995)). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v.*

3

*Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

## III. ANALYSIS

Mathis has brought disability discrimination and retaliation claims under the Texas Labor Code and a second retaliation claim pursuant to the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq*. The Court first analyzes the discrimination claim and then turns to retaliation.

### A. Disability Discrimination

#### 1. *Applicable Law*

"The TCHRA, like the Americans with Disabilities Act ("ADA"), prohibits employment-based discrimination grounded in an individual's disability." *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 473 (5th Cir. 2006). Thus, in terms almost identical to those used by the ADA and Title VII, Section 21.051 of the Texas Labor Code makes it unlawful for an employer to terminate, refuse to hire, or otherwise discriminate against an individual on account of, among other things, disability. *See* Tex. Labor Code § 21.051; *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 451-52 (S.D. Tex. 2010) (same). And because this section of the labor code endeavors to "effect the policies of the ADA," courts are to "look to analogous federal law in reviewing a claim for disability discrimination under Texas law." *Id.* at 452 (collecting cases). Thus, Plaintiff can — and here, does — seek to prove his case using the *McDonnell Douglas* framework to prove his case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).

4

Under the *McDonnell Douglas* analysis, which allows for "indirect" proof, "a plaintiff must first make out a prima facie case of discrimination by showing that: (1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995); *see also Milton v. Tex. Dep't of Criminal Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (same).

If the plaintiff is able to make out a prime facie case, the burden then shifts to the defendant to "articulate some legitimate nondiscriminatory reason for its action that adversely affected the employee. . . . While an employer need not prove the legitimate reason, it must produce some evidence to support. . . . If the employer produces any evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle*, 70 F.3d at 396 (internal quotation marks omitted).

It is in the next step that state law claims distinguish themselves from those brought under federal law. *See, e.g.*, *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007) (noting the difference). While a plaintiff must, for purposes of federal law, "establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination," *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000), Texas law allows a lesser showing. That is, plaintiffs can survive summary judgment on a state law discrimination claim where they can show that "even if the [defendant's stated] reason is true, that another motivating factor was the protected characteristic." *Luera v. Convergys Customer Mgmt. Grp., Inc.*, No. 7:12-CV-316, 2013 WL 6047563, at *7 (S.D. Tex. Nov. 14,

2013); Tex. Labor Code § 21.125 ("Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that . . . disability was a motivating factor for an employment practice, even if other factors also motivated the practice."); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("The plain meaning of this statute establishes 'a motivating factor' as the plaintiff's standard of causation in a TCHRA unlawful employment practice claim, regardless of how many factors influenced the employment decision.").

   2. *Analysis*

      a.   Prima Facie Case

For the purposes of this motion, Defendant does not dispute that Plaintiff suffers from a disability or that he was qualified for his job. Likewise, Defendant does not contest that Plaintiff's termination counts as an adverse employment action. Rather, the tricky issue is whether Plaintiff was replaced by a non-disabled person or was treated less favorably than non-disabled employees. Defendant asserts that Mathis's position was eliminated and thus "the burden never shifts to BDO." (Doc. No. 15 at 15.)

It is, in fact, uncontroverted that Mathis was never replaced. That is not fatal to his case, however. Courts modify the fourth element of the *prima facie* case when an employee's position is terminated altogether in a reduction-in-force ("RIF"). In a RIF case, the fourth element is instead satisfied by "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (internal quotation marks omitted); *see also Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 269 (5th Cir. 2013) (same). Though RIF cases commonly deal with age-based discrimination, this Court has applied the RIF modification

to the *McDonnell Douglas prima facie* case in a disability suit. *See Mercer v. Arbor E & T, LLC*, No. 11-CV-3600, 2013 WL 164107, at *14 (S.D. Tex. Jan. 15, 2013) (Ellison, J.). In *Mercer*, the Court noted that, with respect to this final element, "the threshold for a *prima facie* case is 'extremely low.'" *Id.* (quoting *Roy v. U.S. Dep't of Agri.,* 115 F. App'x 198, 200 (5th Cir. 2004)).

Thus, the question is whether Plaintiff can muster some evidence from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.[1] The Court believes this to be a close question, but ultimately that Plaintiff can do so. In particular, the Court believes that a jury could rely on the following evidence — especially drawing inferences in Plaintiff's favor — to find that Plaintiff's disability was partially responsible for Defendant's decision to terminate him:

- Bard's comment on a client phone call that "If Tim doesn't get hit by a car, maybe we can have him on another meeting" (Doc. No. 19-1 at 70);
- Bard's January 7, 2010 statement that he was "concerned about [Mathis's] health" (Doc. No. 19-10 at 2);
- Bard's January 7, 2010 e-mail to Foreman suggestion "[w]e need to watch [Mathis] over the next few months" (Doc. No. 19-13 at 2);
- Bard and Foreman joking in February 2010 about Mathis's frequent absences (Doc. No. 19-12 at 2);
- Bard's instruction in Mathis's spring 2010 performance review to "try not to get hit by a car this year"[2] (Doc. No. 19-3 at 3);
- Bard's statement that in Fall 2010 that it was "unfortunate" that Mathis would need to go on leave to have surgery (Doc. No. 19-3 at 3; Doc. No. 19-1 at 77);

---

[1] It is likely that this standard, first articulated in the context of federal claims, is coterminous with his ultimate burden under state law. That is, given that, in the end, Plaintiff must show only that disability was a motivating factor in Defendant's decision to eliminate his position, it appears impossible to state this sort of *prima facie* case and not defeat summary judgment altogether.

[2] This statement is the subject of Defendant's Motion to Strike. (Doc. No. 23.) Defendant argues that Plaintiff's explanation of that statement in his declaration contradicts his deposition testimony, and thus requires an explanation before a court can credit it. *See Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002) ("[W]hen the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict."). Not only is the statement at issue not the "sole evidence" creating a genuine issue of material fact, the Court agrees with Plaintiff that there is in fact no conflict. (*See* Doc. No. 24 at 2 (comparing declaration to deposition testimony).) Thus, Defendant's Motion to Strike Plaintiff's introduction of this comment is **DENIED**. The Court does not rely on any of the other evidence that Defendant has moved to strike.

- Defendant's September 2010 decision — made in between instances of leave — to issue a mid-year review downgrading Mathis to a rating of 2 (Doc. No. 19-16 at 3);
- Bard's comment in October 2010, after Mathis had screws placed in his spine, that Mathis could say he was "permanently screwed" (Doc. No. 19-14 at 2);
- Bard's mentioning Mathis's disability in a group meeting in December 2010 (Doc. No. 19-3 at 3);
- Bard's May 2011 e-mail suggesting that he did not want to eliminate Mathis's position unless he could reinstate the position soon thereafter (Doc. No. 19-19 at 4).

In this posture, and in determining whether Plaintiff has made out a prima *facie case*, all the Court need find is that the evidence, taken together and viewed in the light most favorable to Mathis, would allow a jury to conclude that Plaintiff's disability contributed in some way to Defendant's decision to terminate him. The Court concludes that it would.

      b. <u>Defendant's Legitimate, Non-Discriminatory Reason</u>

Defendant explains that Mathis was terminated (1) because his "underperformance could not support his considerable salary and benefits as a dedicated Southwest Leader, and (2) once the Southwest Region of BDO was combined with the Central Region, BDO could not justify employing a regional Leader who was unable to generate revenue in the Southwest Region." (Doc. No. 19 at 17.) Defendant has brought forward declarations, deposition testimony, internal e-mails and contemporaneous notes, and financial documents that are *more than sufficient* to meet its burden of production. (Doc. No. 25-1 at 3-11; Doc. No. 25-1 at 21-22; Doc. No. 25-2 at 6-7; Doc. No. 25-3 at 27-28; Doc. No. 25-4 at 1; Doc. No. 25-4 at 21; Doc. No. 25-5 at 1-2; Doc. No. 25-6 at 7-14; Doc. No. 25-7 at 1-46; Doc. No. 25-8 at 1-3.)

      c. <u>Plaintiff's "Motivating Factor" Showing</u>

Recall that the final stage of the *McDonnell Douglas* analysis is where a state law claim varies markedly from its federal analog. Plaintiff need only show that his disability was "a motivating factor" — he does *not* need to show that Defendant's proffered justifications were false, and so the Court does not make that inquiry. In fact, the Court can see little difference

8

between Plaintiff's burden at the *prima facie* stage of a RIF case — to put forth evidence from which a jury could find that Defendant did intend to discriminate — and his burden here — to show that discrimination was a motivating factor.

Mathis relies in large part on the comments made by Bard. "[A] plaintiff wishing to use workplace remarks as circumstantial evidence of employment discrimination need only show that the remarks demonstrate discriminatory animus on the part of a person who is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker." *Leach v. Baylor Coll. of Med.*, No. CIV.A. H-07-0921, 2009 WL 385450, at *25 (S.D. Tex. Feb. 17, 2009). The Fifth Circuit has made clear that "discriminatory remarks may be taken into account 'even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision.'" *Matthews v. United Bhd. of Carpenters & Joiners of Am.*, 228 F. App'x 436, 440 (5th Cir. 2007) (quoting *Palasota*, 342 F.3d at 578). And while *Matthews* did not credit the comments cited by plaintiff because the speaker did not have any influence on plaintiff's termination, district courts have relied on protected characteristic-related comments by a plaintiff's supervisor(s) as "appropriate circumstantial evidence of . . . discrimination" sufficient to defeat summary judgment. *See, e.g.*, *Acker v. Deboer, Inc.*, 429 F. Supp. 2d 828, 847 (N.D. Tex. 2006) (construing claim of age discrimination).[3]

---

[3] In *Acker*, "(1) [Company President] Ron deBoer asked [a vice president] when Acker was going to retire; (2) Ron deBoer asked [the vice president] whether he could have found a younger employee to fill Acker's position; (3) Ron deBoer told [the vice president] that Acker needed to be 'put out to pasture'; (4) Ron deBoer told [the vice president] to find a younger employee who could run 'faster and leaner' than Acker; (5) Doug Vogel, deBoer's Vice President of Operations (and Ron deBoer's son-in-law) expressed disapproval with Acker's performance and told [the other vice president] that Acker should get a job as a night watchman; and (6) senior management in deBoer's home office in Wisconsin openly discussed Acker's retirement and possible replacement by a younger employee at a company meeting." *Acker*, 429 F. Supp. 2d at 838. Though this final comment is certainly closer to a 'smoking

Consequently, in view of all the evidence discussed in Part III.A.2.a *supra*, the Court believes that Plaintiff has put forward enough evidence that would tend to suggest that his disability was a motivating factor, and that he can survive summary judgment. Of course, much of this evidence is open to multiple interpretations. Many of the more controversial e-mails can be viewed either as expressions of genuine concern that we all would hope our employer would show in a time of need or, as Mathis posits, as evidence of discrimination. Some messages can be seen as lighthearted jokes prompted by Mathis himself, not hardhearted insults meant to diminish Mathis's standing in the workplace. As Defendant posited before the Court, this may well be a case of "no good deed goes unpunished." Defendant has ample evidence that it will present at trial to convince the jury of just that. But the Court is not asked here to decide how to best interpret the evidence or how to properly weigh it. There is a serious enough fact issue as to whether Plaintiff's disability motivated Defendant that the Court must **DENY** the Motion for Summary Judgment.

### B. Retaliation

Plaintiff asserts retaliation claims under the Texas Labor Code and under the FMLA. Texas Labor Code Section 21.055 makes it unlawful for an employer to retaliate against an employee who "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Labor Code § 21.055. "For a *prima facie* case of retaliation under § 21.055, the plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decisions." *Williamson*, 695 F. Supp. 2d at 452 (citing

---

gun' than anything Mathis has presented, on balance, the evidence in *Acker* that Plaintiff's age was a motivating factor was not significantly stronger than Mathis's evidence is here.

*Thomas v. Clayton Williams Energy, Inc.,* 2 S.W.3d 734, 739 (Tex. App.-Houston [14th Dist.] 1999, no pet.)). "If the plaintiff establishes his *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory purpose for the adverse action. As § 21.125(a) and its 'motivating factor' language do not apply to claims for retaliation under § 21.055, the plaintiff must then establish pretext by showing that without his protected activity, the defendant's prohibited conduct would not have occurred." *Luera*, 2013 WL 6047563, at *9 (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487-89 (5th Cir. 2004)).

Similarly, the FMLA expressly prohibits employers from punishing employees for exercising the rights that the statute guarantees. *See* 29 U.S.C. § 2615. FMLA retaliation claims are also analyzed using the *McDonnell Douglas* framework. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). The first two steps are much the same as they are for state law retaliation; the protected activity just has to be FMLA-related. Where the analysis reaches the third step, the employee must "offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for [retaliation], or" — under a mixed motives analysis — "(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was [retaliation]." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). Finally, "[i]f the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus." *Id.* Even Defendant acknowledges that, until a higher court says otherwise, the Supreme Court's decision in *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532 (2013) to require but-for causation in Title VII cases does not alter our calculus for FMLA cases.

Plaintiff's case under both statutes fails at the *prima facie* stage, but not for the usual reasons. No one disputes that, at some point, he engaged in protected activity. The record confirms that he took FMLA leave in the fall of 2010 and asked to do so again just days before his ultimate termination. (*See* Doc. No. 25-5 at 4-8; Doc. No. 25-8 at 9.) Plaintiff's brief suggests there may have been yet another instance of FMLA leave. (*See* Doc. No. 19 at 24.) The issue is *not* that protected activity never occurred.

Rather, Plaintiff's claims founder because he still has not told the Court just which of these activities he believes led Defendant to retaliate against him. Starting with Plaintiff's Complaint, that document sets forth most of the relevant facts, but his paragraph specifically focusing on state law retaliation explains only that "Defendant retaliated against Plaintiff for seeking a reasonable accommodation." (Doc. No. 1 ¶ 8.2.) Likewise, his paragraph on FMLA retaliation asserts that "Plaintiff was terminated in retaliation for requesting federally protected leave under the FMLA." (*Id.* ¶ 9.2.) Were the Court now considering a Motion to Dismiss, the lack of specificity might not be fatal, as there is likely enough in Plaintiff's "Facts" section to state a plausible retaliation claim, but it indicates that, from the start of this litigation, Plaintiff's retaliation claims were somewhat ambiguous.

Now, at the summary judgment stage, Plaintiff's claims have hardly come into focus. Take, for example, Plaintiff's *prima facie* case for state law retaliation. Presumably because Plaintiff had never indicated that it should do otherwise, Defendant in its Motion for Summary Judgment focused on Plaintiff's June 10, 2011 request for additional leave, conceded that it counted as protected activity, but argued that Plaintiff could not establish a causal connection with his termination. (*See* Doc. No. 15 at 26.) Plaintiff, then, began his response by noting that Defendant had conceded that Plaintiff could establish that he engaged in a protected activity.

12

Case 4:13-cv-00134 Document 26 Filed in TXSD on 03/12/14 Page 13 of 15

(Doc. No. 19 at 22.) But he proceeded to analyze more than just the one protected activity that Defendant conceded. Rather, he argued that

> Specifically, it is undisputed that Mathis requested seven (7) weeks of FMLA leave beginning October 1 through November 22, 2010, and further requested reasonable accommodation in the form of lifting restrictions continuing through January 2011. (Exhibit C at ¶ 8; Exhibit A at 211). Mathis also continued to require time off for further surgeries and procedures in early 2011 through the Spring of 2011. (Exhibit C at ¶ 9). It is also undisputed that Mathis requested further restrictions in the form of a reduced schedule on June 10, 2011. (Exhibit A at 93; Exhibit C at ¶ 11.) These events all constitute protected activity.

(Doc. No. 19 at 23.) This is far more than what Defendant conceded.

Plaintiff's explication of his FMLA retaliation claim is no different. There, Plaintiff vacillates between the Fall 2010 leave and his June 2011 request for more. (*Compare* Doc. No. 19 at 27 ("Bard made clear that he was not happy with Mathis' taking seven weeks of FMLA leave [in Fall 2010].") *with id.* at 28-29 ("Defendant has admitted that Bard and Forman were notified of Mathis' June 10, 2011 leave request before the meeting on June 13th.").) And, he is not even clear on what he believes constituted Defendant's adverse employment decision. (*See id.* at 27 ("Mathis has brought forward evidence showing that his requests for FMLA leave were causally related *to Bard's downgrading of his performance rating in his midyear informal review and to his termination*.").)[4]

At the hearing on this motion, the Court asked Plaintiff several times to clarify what he believes he was retaliated for. Rather than focusing on the Fall 2010 absence, early 2011 visits to the doctor, or his June 2011 request for more leave, Plaintiff's counsel responded: "all of it." That is not sufficient.

There are at least three problems with the fact that Plaintiff's claims are so ambiguously defined. First, his reliance on "all of it" ignores that retaliation claims generally focus on a

---

[4] Plaintiff's complaint, in contrast, identifies only termination as the adverse employment decision taken by Defendant.

13

single protected activity for which a defendant allegedly retaliated in a single, specific way. *See, e.g.*, *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 451-52 (5th Cir. 2013) ("[Plaintiff] . . . claims that LDOJ . . . violated the ADA and Title VII by terminating her employment in retaliation for charges she filed with the U.S. Equal Employment Opportunity Commission."); *Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 913 (5th Cir. 2010) (plaintiff alleged that he was terminated in retaliation for requesting leave to care for his child); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) ("[Plaintiff] claimed that her nonselection was the result of retaliation for her reporting of Dr. Bryan's sexual harassment."). Plaintiff has cited no case which would suggest that a retaliation claim can be premised upon a whole series of actions that took place over the span of eight months. In fact, a claim so stated — where Defendant's alleged mistreatment is pervasive and ongoing — begins to sound less like retaliation than discrimination — a claim that the Court has already here analyzed and allowed to move forward.

Second, Plaintiff's failure to clarify the nature of his allegations has made it impossible for Defendant to present a defense; as Defendant explained at this Court's hearing, it has been forced to shoot at a "moving target." For example, with respect to federal law, Defendant did not undertake a distinct analysis of whether it would have discharged Plaintiff even had he not taken FMLA leave, because the FMLA retaliation claim *it thought* Plaintiff was bringing could not get past the *prima facie* stage. And third — and relatedly — Plaintiff's lack of clarity makes it nearly impossible for the Court to undertake its analysis. For instance, how is the Court to determine whether there existed a causal connection between Plaintiff's protected activity and his discharge if the Court does not even know what protected activity is at issue? How can Plaintiff have been retaliated for "all of it" when, for example, some of his conduct (the June

14

2011 request) took place *after* one of the Defendant's adverse employment decisions (the Fall 2010 performance review)? In the end, *McDonnell Douglas*, as a framework for analyzing these sorts of claims, loses its efficacy where Defendant does not know what it needs to respond to and the Court does not know what it must scrutinize.

Because Plaintiff has not focused the Court on a particular protected activity which he believes motivated Defendant to retaliate, despite numerous opportunities to do so, Plaintiff has failed to establish a *prima facie* case of retaliation, either under state law or the FMLA. As a result, the Court has no choice but to **GRANT** summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 15) is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion to Strike (Doc. No. 23) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this 12th day of March, 2014.

*/s/ Keith P. Ellison*

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**